TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00524-CV






Robert Hastings, Appellant



v.



Patricia Ann Hastings, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 99-12302, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 






 Robert Hastings appeals from a divorce decree that dissolved his marriage to Patricia
Ann Hastings and terminated his parental rights to their two teenaged sons. He raises seven issues
and points of error on appeal. We will affirm the judgment.


BACKGROUND


 Upon filing her petition for divorce on October 21, 1999, Mrs. Hastings requested and
received a temporary restraining order giving her possession of the family's house in Austin ("the
house") and the children, two boys born in 1985 and 1987; the orders governing the parties evolved
during the course of the case. The court signed agreed temporary orders and an agreed protective
order on November 3, 1999. In the temporary orders, the court essentially ordered the parties to be
civil. The court forbade the parties to interfere with the use of the real estate temporarily apportioned
to the respective parties--the house in Austin for Mrs. Hastings and the boys, and a five-acre ranch
near Wimberley for Mr. Hastings. The order also forbade affecting in any manner cable service to
the Austin house. The order allowed Mrs. Hastings to determine the boys' primary residence,
established the parents as joint managing conservators, and established a child support payment
($270.57 per month) and visitation schedule for Mr. Hastings, with the exchange of possession to
occur at Barton Creek Mall. In the agreed protective order, the court forbade Mr. Hastings from
removing the boys from Mrs. Hastings at any place, communicating with Mrs. Hastings or the boys
in a harassing or threatening way, and communicating with them in any way, absent good cause. The
court allowed Mr. Hastings to retrieve listed personal property from the house. In a hearing
November 17, 1999, the associate judge recommended eliminating the prohibition on Mr. Hastings
communicating directly with the boys; the order adopting the recommendation was signed December
22, 1999. (1) In that order, the court also moved the exchange point to Kids Exchange. By an order
dated January 20, 2000, Mr. Hastings was again prohibited from communicating directly with the
boys. 

 The order reinstating the ban on communications by Mr. Hastings to the boys
followed an incident that led to Mr. Hastings's arrest. Officers from the federal Bureau of Alcohol
Tobacco and Firearms searched the premises of the ranch. During this search, Mr. Hastings
allegedly threatened the officers' lives; he was arrested and jailed on January 14, 2000. On May 12,
2000, he was found guilty of retaliation and given a sentence probated for ten years.

 The court heard motions and conducted a non-jury trial on the merits in the divorce
and termination suit on May 30 and 31, 2000. The district court found Mr. Hastings in contempt of
the agreed protective order and the agreed temporary orders. The court found he violated the orders
by writing and telephoning Mrs. Hastings and the boys, changing the address of utility bills, and
failing to exercise the supervised possession; the court warned Mr. Hastings against further
violations but did not assess punishment. (2) The district court granted the divorce and terminated Mr.
Hastings's parental rights. The court granted an unequal distribution of the property based on a
finding of fault for the breakup against Mr. Hastings and a consideration of Mrs. Hastings's needs
for the support of the boys. The court declared that each had an undivided one-half separate property
interest in the house.

 The court's award of community property to Mrs. Hastings included all clothing,
jewelry, other personal property, money, funds in accounts in her name in financial institutions, her
retirement plan, her 1997 Isuzu Rodeo, and the ranch. The court held Mrs. Hastings solely
responsible for the payments on her vehicle and credit cards in her name (approximately $10,000).

 The court's award of community property to Mr. Hastings included all his clothing,
jewelry, personal property, money, funds in accounts in his name in financial institutions and his
retirement plan, as well as the travel trailer at the ranch, his 1994 Mazda pickup, and his 1981 Suzuki
motorcycle. The court held Mr. Hastings solely liable for debts in his name (which he claimed
included $7,000 for improvements to the ranch). The court also ordered Mr. Hastings to pay $5,000
of Mrs. Hastings's attorney's fees (which she claimed totaled $12,690) and $230.57 in back child
support; the court did not order him to pay amounts accrued during his incarceration.


DISCUSSION


 Mr. Hastings appeals, raising several procedural and substantive complaints. In his
amended brief, he has consolidated these into seven issues and points of error.

 By his first point, Mr. Hastings complains that he was denied effective counsel and
that the court's forcing him to continue with retained counsel denied him his right to proceed pro
se. Mr. Hastings did not preserve his complaint about not being allowed to proceed pro se. Before
trial, he asked for court-appointed counsel to replace his attorney, but did not ask to proceed pro se. 
Because his issue on appeal does not match his request at trial, he waived the assigned error. See
Tex. R. App. P. 33.1(a)(1)(A). The requirement that defendants receive effective assistance of
counsel in criminal cases does not extend to civil cases--not even to cases with the heightened
burdens of proof and fundamental issues involved in the termination of parental rights. Howell v.
Dallas County Child Welfare Unit, 710 S.W.2d 729, 735 (Tex. App.--Dallas 1986, writ ref'd n.r.e.),
cert. denied, 481 U.S. 1018 (1987); see also Walton v. City of Midland, 24 S.W.3d 853, 862 (Tex.
App.--El Paso 2000, no pet.); Krasniqi v. Dallas County Child Prot. Servs. Unit, 809 S.W.2d 927,
932 (Tex. App.--Dallas 1991, writ denied). We overrule point one.

 By his second point, Mr. Hastings complains that the district court erred by denying
his motion for continuance when his attorney of record, Jamie Balagia, did not appear at trial. We
will not disturb the district court's denial of a continuance unless the record discloses a clear abuse
of discretion. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). In particular, the absence of
counsel is "not good cause for a continuance or postponement of the cause when called for trial,
except it will be allowed in the discretion of the court, upon cause shown or upon matters within the
knowledge or information of the judge to be stated on the record." Tex. R. Civ. P. 253. Under the
plain language of the rule, Balagia's absence was not good cause for a continuance. The attorney
who appeared at trial, Bristol Myers, is a member of Balagia's law firm. Myers represented Mr.
Hastings at his previous criminal trial; Mr. Hastings blamed his conviction at that trial on the quality
of Myers's representation. The clerk's record contains signatures from both Balagia and Myers as
attorney for Mr. Hastings; they sometimes signed over the other's printed name. The record does
not contain a copy of the agreement hiring Balagia, but such agreements often contemplate that
members of the same firm may appear in each other's stead. Myers's appearance in Balagia's stead
did not require the court to grant the continuance. We note that Mr. Hastings has not shown that the
denial of the continuance prevented him from presenting any evidence that would have changed the
result of the trial; though he complains that he wanted to present evidence of his wife's physical
abuse of him, the reporter's record contains his testimony about an assault upon him by Mrs.
Hastings, which he claimed resulted in her breaking his jaw. The district court did not abuse its
discretion by failing to find good cause to issue a continuance. We overrule point two.

 By point three, Mr. Hastings complains of the "transfer of venue" of the case from
Judge Deborah Richardson of the 345th District Court to Judge Suzanne Covington of the 201st
District Court. (We note that Judge Richardson is not a district judge, but an associate judge who
makes recommendations to a district court. See Tex. Fam. Code Ann. § 201.007 (West Supp.
2001)). Mr. Hastings's reliance on Rule of Civil Procedure 255 to challenge the "transfer" of this
case between the 345th District and the 201st District is unavailing. Rule 255, allowing consensual
transfers of venue between different counties, does not apply to district courts within the same
county. District judges from the same county may sign an order or judgment in any district court in
the same county regardless of whether the case is transferred; the judgment, order, or action is valid
and binding as if the case were pending in the court of the judge who acts in the matter. Tex. Gov't
Code Ann. § 74.094 (West Supp. 2001). Judge Covington presided over the case while sitting in the
345th District. All the judges and districts involved are within Travis County, and all the judges
signed as the 345th District Court. We overrule point three.

 By point four, Mr. Hastings contends that the district court terminated his parental
rights without any evidence that he is or was a bad father or unfaithful husband. Mrs. Hastings
sought termination and her request was granted on grounds that Mr. Hastings engaged in conduct
that endangered the physical or emotional well-being of the boys and that termination was in the
boys' best interest. See Tex. Fam. Code Ann. § 161.001. On appeal, we must determine whether
clear and convincing evidence supports the ground for termination and the decision that termination
is in the boys' best interest. Clear and convincing evidence means the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegation sought to be established. See Tex. Fam. Code Ann. § 101.007 (West 1996); Leal v. Texas
Dep't of Prot. & Regulatory Servs., 25 S.W.3d 315, 319 (Tex. App.--Austin 2000, no pet.). Clear
and convincing evidence is an intermediate standard of proof falling between preponderance of the
evidence and proof beyond a reasonable doubt. See id. The heightened standard of proof required
in the trial court does not alter, but is incorporated into, our standard of review. Id. at 320.

 We will speak first to the finding that Mr. Hastings engaged in conduct that
endangered the physical or emotional well-being of the boys. In termination proceedings, the term
"endanger" means "to expose to loss or injury; to jeopardize." Texas Dept. of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987). The court rejected a requirement of "actual and concrete threat
of injury to the child's emotional or physical well-being." Id. It is not necessary that conduct be
directed at the child or for the child to actually suffer injury for "endangerment" to occur. Id.

 While evidence of "endangerment" in this case is not abundant, it is sufficiently
present. There was evidence that the boys were extremely fearful of Mr. Hastings's unpredictability
and capacity for violence. The boys told their psychologist that their father often spanked them,
usually on the buttocks and legs. The boys told their guardian ad litem that Mr. Hastings spanked
them with a belt; Mr. Hastings would order them to lift their arms so that he could strike them under
their armpits and across their backs. Mrs. Hastings testified that these episodes generally left visible
marks on the boys. Mrs. Hastings testified that once when she tried to stop him from whipping the
boys with a belt, Mr. Hastings pushed her repeatedly and knocked her down in front of them; the
psychologist testified that the boys recounted that incident as justification of their fear of their father. 
Mrs. Hastings provided testimony about Mr. Hastings's drinking habits; she indicated that he drank
daily, usually to the point of being visibly intoxicated. On those occasions when punishment was
meted out to the boys, Mrs. Hastings indicated that the force used by Mr. Hastings was much more
severe when he was intoxicated. 

 Mrs. Hastings testified that Mr. Hastings could be very verbally abusive. Evidence
was presented which indicated that Mr. Hastings spoke very harshly to the boys, when he spoke at
all. The psychologist and the guardian ad litem related an incident in which the boys felt that Mr.
Hastings made the younger boy perform a chore that was extremely dangerous. Mr. Hastings
ordered the boy onto the roof of the house to complete a repair. The boy became extremely fearful
because of the presence of rotten wood and a slippery surface. When the boy became anxious and
began to cry, Mr. Hastings yelled at the boy to finish the job and threatened him with a whipping if
he didn't complete the task. The combination of factors, i.e., the conditions of the roof, the boy's
fear, and the intimidation by Mr. Hastings, created a dangerous situation that easily could have
resulted in serious harm to the boy.

 Other testimony indicated that the children faced the threat of endangerment and that
the existing relationship between Mr. Hastings and his children was not a proper one. Witnesses,
including the guardian ad litem, expressed concern about Mr. Hastings's "preoccupation" with guns
and his emotional stability. He owned ten to fifteen firearms when living at the house, keeping some
of them in hollow places in the walls of the house. He told the guardian ad litem that he planned to
kill himself within two years if he was not allowed to have access to his guns; the felony conviction
means that Mr. Hastings will not be allowed to legally possess firearms. It is a concern that Mr.
Hastings was diagnosed with depression, but chose not to take the prescribed medications because
they "took the passion out of life." (3) Mr. Hastings withdrew from the family approximately a year
before the divorce began, living in a separate bedroom, locking the door, and all but eliminating
interaction with the family. Mr. Hastings also testified about having visions of manifestations of evil
in the house.

 For the finding of the trial court to be upheld, the evidence must also support the
requirement that termination be in the best interest of the children. The supreme court has developed
a list of factors that may be considered in determining whether termination is appropriate. Holley
v. Adams, 544 S.W.2d, 367, 372 (Tex.1976). Several of the factors are relevant in this case: (A) the
desires of the child; (B) the emotional and physical danger to the child now and in the future; and
(C) the acts or omissions of the parent that may indicate that the existing parent-child relationship
is not a proper one. Id.

 The wishes of the boys were strongly expressed in a letter from the boys to their
father. In the letter, the boys indicate that they are "terrified" of their father because of the "mean"
things he has done to them and to their mom, and that their wish is to have no further contact with
him. The boys feared that serious violence by Mr. Hastings against either them or their mother was
inevitable. It is worth noting that Mr. Hastings repeatedly offered before and during trial to terminate
his parental rights voluntarily in exchange for certain monetary and property division guarantees. 
His repeatedly expressed demand was that he have no child support obligation; when told that the
termination would achieve that goal, he offered to sign a voluntary termination. The court, however,
proceeded to trial without obtaining the signature because of the continued efforts by Mr. Hastings
to obtain property concessions before signing.

 Mr. Hastings criticized these witnesses' concerns as unfounded or overstated. He
testified that he did not verbally abuse the boys and that he had not used corporal punishment for two
years before the trial. The guardian admitted he had never seen Mr. Hastings use corporal
punishment on the boys, and neither the guardian nor the boys' therapist saw any abuse-related
injuries on the boys. The therapist described the discipline as severe, but nonetheless not physical
abuse. Mr. Hastings testified that his chore details were reasonable and designed to teach the boys
responsibility. Calling the Bureau of Alcohol, Tobacco, and Firearms his political enemy, Mr.
Hastings expressed a strong belief in his right to own guns. He insisted he was a threat to no one but
himself. The guardian conceded that Mr. Hastings had not in his hearing made any explicit threats
to anyone.

 We conclude that the trial court could have found by clear and convincing evidence
that Mr. Hastings engaged in conduct that endangered the physical or emotional well-being of the
boys. We also find that termination effectuated Mr. Hastings's wishes expressed in court and the
boys' wishes expressed in evidence. Because termination was in the boys' best interest, we conclude
that the court did not err by terminating Mr. Hastings's parental rights to the boys. We overrule
point four.

 Mr. Hastings contends by point five that the district court erred by finding him in
contempt of the protective order. "Appellate courts do not have jurisdiction to review contempt
proceedings on direct appeal." In re Rich, 993 S.W.2d 272, 274 (Tex. App.--San Antonio 1999,
orig. proceeding). We dismiss point five. See id.

 By point of error six, Mr. Hastings challenges the unequal property division. The
court must divide the parties' estate "in a manner that the court deems just and right, having due
regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001
(West 1998). The trial judge has wide discretion in dividing the parties' community estate, and we
should not alter that division on appeal except to correct a clear abuse of discretion. See Murff v.
Murff, 615 S.W.2d 696, 698-700 (Tex. 1981); Wilkerson v. Wilkerson, 992 S.W.2d 719, 722 (Tex.
App.--Austin 1999, no pet.). The property division need not be equal as long as it is equitable and
the circumstances justify a disproportionate division. Kimsey v. Kimsey, 965 S.W.2d 690, 704 (Tex.
App.--El Paso 1998, pet. denied); Thomas v. Thomas, 525 S.W.2d 200, 202 (Tex. Civ.
App.--Houston [1st Dist.] 1975, no writ). Factors the district court may consider in dividing the
estate include, but are not limited to, the following: a disparity of incomes or of earning capacities,
the spouses' capacities and abilities, benefits that the party not at fault would have derived from
continuation of the marriage, business opportunities, education, relative physical conditions, relative
financial condition and obligations, disparity of ages, size of separate estates, and the nature of the
property. Murff, 615 S.W.2d at 699; Kimsey, 965 S.W.2d at 704. We defer to the district court's
determination of the credibility of the witnesses' testimony, and can only disturb the trial court's
findings in a case of clear abuse of discretion. See Ford v. Panhandle & Santa Fe Ry. Co., 252
S.W.2d 561, 563 (Tex. 1952); Murff, 615 S.W.2d at 700.

 Mr. Hastings has not shown that the district court clearly abused its discretion in
ordering an unequal division because Mrs. Hastings alone bears financial responsibility for their
sons. Though Mr. Hastings spoke of wanting to accumulate money to give to the boys, he did not
pay the amounts of child support ordered even before his incarceration. (4) He repeatedly showed
disdain for child-support obligations, writing "extortion" in the memo line of one check and at trial
terming the obligation to pay $270 monthly (roughly $4.50 per boy per day) for the support of two
teenage sons "slavery." Even if he does set aside money for the boys, there is no guarantee of how
much he will give them or when he will bestow it. In the meantime, Mrs. Hastings must provide the
boys food, clothing, shelter, and other items as the needs arise.

 The disparity in the property division--chiefly, the award of the ranch solely to Mrs.
Hastings--appears suited to addressing the disparity in the Hastingses' obligations. The parties'
earning capacities appear similar. Both parties have college degrees. Mrs. Hastings is a teacher; Mr.
Hastings has a psychology degree and teacher certification. Their interests in the ownership of the
house are equal. They each got a vehicle, and Mr. Hastings additionally got a motorcycle. They
each got their personal property. They each had credit-card debt. There was evidence that Mr.
Hastings had incurred debt and provided labor for improvements on the house and ranch, but there
was also evidence that Mrs. Hastings consistently earned income for the family, while Mr. Hastings's
income was less steady. Though the ranch was community property, (5) the court awarded it entirely
to Mrs. Hastings. Mr. Hastings valued the ranch at roughly $11,600. Using the temporary order of
child support as a benchmark, the support of each boy is about $135 per month per parent. There
are just over thirty-nine and fifty-nine months between the date of the divorce decree and the boys'
respective eighteenth birthdays. Using these measures, the total increased financial burden that Mrs.
Hastings will bear in supporting the boys is $13,230. (6) Thus, the value of the ranch actually fails to
fully compensate Mrs. Hastings for the increased share of the financial burden. Mr. Hastings has
not shown that this allocation of property is a clear abuse of discretion. We overrule point six.

 By point of error seven, Mr. Hastings contends that he did not receive a fair and
equitable divorce because he was "injured by a sexual[ly] biased judge, who failed to recognize
appellee's untruthfulness and insufficient evidence even when appellee witnesses contradicted
themselves." Mr. Hastings also reiterates some of his earlier arguments, essentially arguing for
cumulative error. Our examination of the record does not reveal a gender bias in the decree. Mr.
Hastings complains about the orders issued October 21 (e.g., that they were based on an
unsubstantiated affidavit); these complaints are moot because the temporary orders were superseded
by subsequent temporary orders and expressly terminated by the final decree. His complaints about
the credibility of witnesses also fail. In a bench trial the trial court is the sole judge of the credibility
of witnesses and the weight to be given their testimony, and may believe or disbelieve part or all of
any witness testimony. Lahar v. Lahar, 803 S.W.2d 468, 469 (Tex. App.--Beaumont 1991, no
writ); see Bocquet v. Herring, 972 S.W.2d 19, 22 (Tex. 1998); see also Vandyke v. Austin Indep. Sch.
Dist., 547 S.W.2d 354, 355-56 (Tex. Civ. App.--Austin 1977, no writ). As discussed above, the
final decree is sufficiently supported by the record. We find no specified or cumulative error and
overrule point seven.

 Mr. Hastings's original brief contained some complaints not stated in the issues/points
of error in his amended brief. He complained that the district court erred by not conducting a jury
trial because he never waived his right to a jury. Texas Family Code section 6.703 allows parties
to demand a jury. But parties who want a jury trial must affirmatively request it. Tex. R. Civ. P.
216(a). Mr. Hastings points to no request in the record, nor do we find one. Mr. Hastings complains
that the district court erred by failing to allow him to sign a property division that would have given
Mrs. Hastings the house and allowed him to retain the ranch. There is no evidence in the record that
Mrs. Hastings consented to such a division. Mr. Hastings's unilateral consent would not have been
binding on Mrs. Hastings or the court. We find no error requiring that the divorce decree be altered.

 Mr. Hastings contends by a second amended brief that the district court erred by
issuing a protective order on February 15, 2001. We cannot consider the merits of this complaint
because we conclude that stand-alone protective orders are not subject to challenge by direct appeal. 
See Normand v. Fox, 940 S.W.2d 401, 404 (Tex. App.--Waco 1997, no writ) (holding that order
is unappealable, interlocutory order because trial court retains jurisdiction to modify it); but see
James v. Hubbard, 985 S.W.2d 516, 518 (Tex. App.--San Antonio 1998, no pet.) (holding that order
is final and appealable because it is a permanent injunction that disposes of all parties and issues). 
We dismiss the issues raised by Mr. Hastings's second amended brief.


CONCLUSION


 Having overruled or dismissed Mr. Hastings's asserted errors, we affirm the judgment
of the district court



 

 David Puryear, Justice

Before Justices Kidd, B. A. Smith, and Puryear

Affirmed

Filed: May 17, 2001

Do Not Publish

1. The relaxation of the restrictions was effective when recommended by the associate judge
on November 17, 1999. Associate judges make recommendations to the district court regarding
orders the court should make. See Tex. Fam. Code Ann. § 201.007 (West Supp. 2001). 
Associate judges must make a written report to the district court including those recommendations;
the recommendations can take the form of a notation on the docket sheet, and the associate judge
may give the parties notice of the substance of the report orally in open court. Id. § 201.011(a). 
Except for the recommendation to appoint a receiver, all recommendations of the associate judge
are in full force pending the appeal of the associate judge's report. Id. § 201.013(a). The December
22 order states that the associate judge on November 17, 1999 announced in open court and/or noted
on the docket sheet the recommendation that Mr. Hastings be allowed to have direct, non-threatening
communication with the boys. (The reporter's record of the November 17 hearing is not part of the
appellate record.) The recommendation thus was effective on November 17, 1999.
2. Mr. Hastings was indicted for threatening the lives of his wife and the judges involved in this
divorce action. Mr. Hastings states in his amended brief that he remains incarcerated because of
these charges.
3. When Mrs. Hastings's counsel asked, "[The medicine] took the passion out of life; is that
correct?" Mr. Hastings responded, "That's right. I was having some flat affect." 
4. Mr. Hastings paid only $40 of the payment due January 1, 2000; he was not jailed until
January 14. This deficit was the basis for the court's award of $230.57 in past-due child support;
the court declined to award the $1080 of unpaid support accrued for the months he was jailed.
5. All property possessed by either spouse during or on the dissolution of marriage is presumed
to be community property. See Tex. Fam. Code Ann. § 3.003 (West 1998). To overcome the
presumption, a party must present clear and convincing evidence that the property is separate. See
Tex. Fam. Code Ann. § 3.003 (West 1998). This evidence must generally trace and clearly identify
the property as separate. See Bahr v. Kohr, 980 S.W.2d 723, 728 (Tex. App.--San Antonio 1998,
no pet.) (citing McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex.1973)). A party may not
overcome the presumption merely by showing that separate property was used to pay all or some of
the installments on a note for property acquired during marriage; the payments create a right to
reimbursement for the spouse, but not a separate property interest. See Broussard v. Tian, 295
S.W.2d 405, 406 (Tex. 1956).


 Mr. Hastings concedes that Mrs. Hastings made some payments on the ranch. His claims that
he paid for the property with proceeds from the sale of his separate property were undercut somewhat
by his admission that he sold that property three years after obtaining a contract to buy the ranch. 
He did not provide specific evidence of the amounts paid from his separate accounts.
6. Calculating the obligation from trial through the boys' eighteenth birthdays, the calculation
is as follows: $135/month X (39 + 59) months = $13,230. This calculation ignores inflation,
potential increased needs, and any obligations to support children through high school graduation,
much less college.

 Having overruled or dismissed Mr. Hastings's asserted errors, we affirm the judgment
of the district court



 

 David Puryear, Justice

Before Justices Kidd, B. A. Smith, and Puryear

Affirmed

F